IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SAMUEL M. NICKLES AND<br>BARBARA J. NICKLES ON BEHALF OF<br>DANIEL NICKLES (DECEASED),<br><br>    Plaintiffs,<br><br>v.<br><br>LAW OFFICES OF DONALD D. ZUCCARELLO,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:06cv0702<br>)  Judge Thomas A. Wiseman, Jr.<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This civil action for legal malpractice is pending in this Court based on diversity jurisdiction. Presently pending is Defendant's Motion for Summary Judgment (Doc. No. 29), based on the arguments that (1) no legal act or omission of the defendant was the legal cause of any damages allegedly suffered by the plaintiffs and (2) plaintiffs' cause of action is barred by the one-year statute of limitations. Plaintiffs have filed their response in opposition to the motion and a memorandum of law in support of same. As explained below, the Court finds that there are no material issues of disputed fact, and the defendant is entitled to summary judgment in its favor on the basis that Plaintiffs are unable to present admissible evidence sufficient to support a verdict in their favor.

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case." *Beecham v. Henderson County*, 422 F.3d 372, 374 (6th Cir. 2005). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is insufficient, however, simply to show "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In addition, "the mere existence of a scintilla of evidence in support of Plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II. EVIDENTIARY ISSUES

Plaintiffs Samuel and Barbara Nickles bring this suit on behalf of their son, Daniel Nickles (the "Decedent"), who passed away intestate on June 23, 2006 at the age of 29. Unfortunately for the Plaintiffs, the Federal Rules of Evidence bend only slightly in deference to death, and the Plaintiffs' inability to present the testimony of their deceased son poses a significant evidentiary hurdle for them. Specifically, of course, Rule 802 excludes hearsay except as otherwise permitted by the rules, and Rule 801 defines hearsay generally as an out-of-court statement offered to prove the truth of the matter asserted. The latter rule's elaboration on what is *not* considered hearsay does not apply here, nor do the exceptions set forth in Rule 803 have any relevance to this case. Rule 804 specifically applies to situations in which a declarant is unable to testify because of death, but is potentially relevant only insofar as it permits the admission of "former testimony" under circumstances in which the defendant had the opportunity to develop that testimony by direct or cross examination.

In this case, the Plaintiffs offer several forms of hearsay evidence in support of their arguments, none of which is admissible under any of the above-referenced exceptions. In particular, Plaintiffs have come forward with a written "Statement" by the Decedent, addressed to his attorney, in which he claims: "I Mr. Daniel Lee Nickles do hear by testify that all the phone conversation, question's asked, and statements replied . . . are a true an accurate account of what was asked, said, and responded to." (Doc. No. 42-12, at 1.) This Statement does not qualify as "former testimony" subject to direct or cross-examination by the Defendant and is therefore not admissible under Rule 804(b)(1). Plaintiffs also offer a letter or several letters purportedly written by Shannon Russell, a former colleague of the Decedent's. Mr. Russell has apparently not been located; for that reason he has not been deposed and is unavailable to testify at trial. His written statements, like the Decedent's, are inadmissible hearsay not subject to any exception. Finally, the Plaintiffs seek to admit into evidence hearsay in the form of statements allegedly made to them by their son prior to his death. These statements are likewise hearsay that is not subject to any exception.

The facts outlined below are considered in the light most favorable to the Plaintiffs, taking into

account these evidentiary problems. Thus, only those facts that are truly undisputed or that are supported by admissible evidence in the record are included.

## II.  FACTUAL BACKGROUND

The Nickles reside in Talladega, Alabama, as did their son prior to his untimely death.

Defendant Law Offices of Donald D. Zuccarello is located in Nashville, Tennessee and was retained in 2003 to represent the Decedent in a workers' compensation lawsuit against the Decedent's former employer, Food Lion. (9/26/2007 Affidavit of Donald D. Zuccarello (Doc. No. 32) ¶ 2.) The parties conducted discovery throughout 2003 and 2004, including the exchange of written interrogatories and the production of the Decedent's medical records. (*Id.* ¶ 3.) On March 18, 2005, attorney Donald Zuccarello sent a letter to the Decedent advising him that Food Lion had made a settlement offer that included: "$75,000.00, closed future medical, your [Decedent's] resignation and release of all claims." (*Id.* ¶ 6 & Ex. A.) On April 29, 2005, while the workers' compensation suit was still pending, the Decedent advised Mr. Zuccarello that Food Lion had fired him. (*Id.* ¶ 7.)

Plaintiffs allege that the Decedent was discriminated against and ultimately fired by Food Lion in retaliation for his having filed a workers' compensation claim. In their answers to Interrogatories, however, Plaintiffs provided the name of Shannon Russell as the only person with knowledge concerning the alleged harassment and discrimination to which the Decedent was allegedly subjected while still employed by Food Lion. (Doc. No. 34-1, at ¶ 1.) Mr. Russell, as indicated above, has not been located and has not given his testimony in this case. Mr. Nickles and Mrs. Nickles both testified in their depositions that they had knowledge of the alleged harassment only through comments the Decedent had made to them, which are not admissible. (S. Nickles Dep. (Doc. No. 34-9) at 196:6–11; B. Nickles Dep. (Doc. No. 34-2) at 30:18–21.)

A Benefit Review Conference, the purpose of which was to try to settle the Decedent's workers' compensation claim, was held on June 21, 2005. Attorney Delain Deatherage from the Law Offices of Donald D. Zuccarello attended on behalf of the Decedent. Decedent traveled from Talladega, Alabama to attend the Benefit Review Conference in Clarksville, Tennessee. (Affidavit of Delain Deatherage (Doc. No. 33) ¶ 2–3.) According to Ms. Deatherage, she told the Decedent at the outset of the Conference that she had been informed that all settlement offers from Food Lion were going to include closed medicals

and the release of all claims. Having relayed that information, Ms. Deatherage advised the Decedent that he had the option of ending the settlement conference or proceeding with settlement negotiations. According to Ms. Deatherage, she answered any questions the Decedent posed to her regarding the terms of the settlement. The Decedent apparently elected to proceed with the settlement, and the case was settled that day for $100,000, no future medicals, and a release of all claims, including any potential discrimination, retaliation or wrongful discharge claims. (*Id.* ¶ 4.)

On July 1, 2005, more than a week after the settlement conference, the Decedent signed a General Release that released Food Lion from any potential claims not related to his workers' compensation lawsuit. (Doc. No. 33, at ¶ 5 & Ex. A.) The first two paragraphs of the General Release contain an elaborate and unmistakably clear release of all possible claims the Decedent might have had against Food Lion:

> That the undersigned, DANIEL NICKLES, being of lawful age, for and in consideration of Five Hundred and 00/100 Dollars ($100.00) [*sic*] to the undersigned in hand paid, receipt whereof is hereby acknowledged, does hereby and for my executors, successors, heirs, administrators and all other persons . . . acquire and forever discharge FOOD LION, LLC and RISK MANAGEMENT SERVICES, INC. and their agents, servants, parents, subsidiaries, successors, heirs, executors, administrators and all other persons, corporations, firms, associations or partnerships ("Releasees") of an from all claims, actions, causes of action, demands, rights damages, costs, expenses and compensation whatsoever, which the undersigned how has or which may hereafter accrue on account of or arising from the undersigned's employment with FOOD LION, LLC, including, but not limited to, any claim for retaliatory discharge and/or wrongful discharge; . . . any claim arising under Title VII of the Civil Rights Act of 1964 . . . and/or any applicable state fair employment practices statute including, but not limited to, the Tennessee Human Rights Act. . . ; any claim for intentional or negligent infliction of emotional distress or outrageous conduct; any claim for breach of duty, libel, slander or tortious conduct of any kind; any claim for interference with business relationships, contractual relationships or employment relationships of any kind; any claim for breach of duty, including, but not limited to, breach of any implied covenant of good faith and fair dealing; any claim for breach of contract . . . ; any claim for unemployment compensation; . . . any claim for personal injury or property damage; any and all common law, statutory law, or regulatory claim which could have been brought based upon any local, state or federal law or regulation based upon his employment or lack of employment; any claim which could be enforced by any local, state, or federal agency, commission, or other governing body; and any other common law or statutory claim based upon federal or state law.
>
> Without limiting the generality of the foregoing, DANIEL NICKLES acknowledges and covenants that, in consideration for the foregoing being paid or provided to him by Releasees, he has knowingly and voluntarily relinquished, waived and forever released any and all remedies which might otherwise be available to him including, without limitation, claims for contract or tort damages of any type, back pay, emotional distress or pain and suffering damages, punitive or exemplary damages, lost benefits of any kind, including, without limitation, . . . unemployment benefits, recovery of attorneys' fees, costs, expenses of any kind, reinstatement to a position of employment or re-employment with FOOD LION, LLC. . . .

(Doc. No. 33, Ex. A, at 1–2.) The release was executed by the Decedent and witnessed by his mother on July 1, 2005. (*Id.* at 3.)

The Decedent, with his mother as witness, signed another General Release of Claims on July 18, 2005, which was identical to the first except that the second version corrected the error in the first sentence to make it clear that the consideration being paid was indeed $100.00 and not $500.00. In addition, where the figure "$100.00" was handwritten in two places in the original release, it was typed in the second version. (Doc. No. 33, Ex. B.) Mrs. Nickles testified that her signature appears on both forms but, because of a medical condition, she does not remember actually signing the forms.[1]

Mr. Nickles testified in his deposition that the Decedent called him at a break during the settlement conference in Clarksville and that the Decedent was "upset" and did not want to sign a release of all claims. (Doc. No. 34-8) at 158.) 156:10–15.) According to Mr. Nickles, he then spoke to the lawyer on the phone about the Release and was assured that the Release was solely about the Decedent's "get[ting] his money from workman's comp. He has to sign this to get his money." (*Id.* at 160:16–24; *see also id. at* 156:10–15.).) Based on his testimony, Mr. Nickles also apparently believed that his son signed the General Release of Claims the day of the Benefit Review Conference. (*Id.* at 183:21–24.) In an affidavit filed in opposition to the motion for summary judgment, Mr. Nickles claims he subsequently contacted the Defendant Law Office and was again told that the Decedent could still pursue a employment discrimination; he also claims neither he nor his son[2] understood that such a claim would be barred by the General Release. (Doc. No. 46, at ¶¶ 23, 25.)

In a separate proceeding, the settlement of the workers' compensation claim was approved by the Chancery Court for Robertson County, Tennessee on July 21, 2005.

Plaintiffs now allege that the Defendant was negligent and breached the applicable standard of care by (1) advising the Decedent to execute the settlement agreement in which he waived his right to

---

[1] The Court observes that both Mrs. Nickles' and the Decedent's signatures vary substantially from the first document to the second. (*Compare* Doc. No. 34-4, at 4 *with* Doc. No. 34-4, at 8.) Mrs. Nickles testified that both appear to be her signature, and that she recognized her son's signature on the July 1 Release but could not be certain whether the signature on the July 18 Release was Decedent's. (B. Nickles Dep. (Doc. No. 34-3) at 42:20–23; 45:11–25.) Plaintiffs have not alleged that it is a forgery, however.

[2] Mr. Nickles is obviously not competent to testify regarding what his son believed.

pursue any claims for employment discrimination against Food Lion; (2) failing to advise the Decedent to consult with an employment lawyer prior to executing the General Release of Claims and waiving his right to pursue employment discrimination claims against Food Lion; and (3) by advising the Decedent that it was necessary to execute the General Release of Claims in order to settle his workers' compensation claims. Plaintiffs aver that the Defendant's negligence caused the Decedent to be prohibited from pursuing a meritorious employment discrimination action against Food Lion. Plaintiffs further claim that they and the Decedent did not learn of the Defendant's negligence until speaking with attorney Robert Martin in September 2005.

Along with their Response in Opposition to Summary Judgment, Plaintiffs have also filed affidavits by two local attorneys who assert that it was negligent for the Defendant not to advise the Decedent *not* to sign the General Release. (Doc. Nos. 44 and 45.)

Plaintiffs filed their Complaint on July 21, 2006. In its answer, the Defendant asserts, among other defenses, that Plaintiffs' claim must fail because they have no competent evidence that the Decedent would have prevailed in any employment discrimination/retaliation claim against Food Lion and because the Plaintiffs' claims are barred by the applicable statute of limitations. The Defendant now premises its motion for summary judgment on both those grounds.

**III. DISCUSSION**

Defendant argues first that Plaintiffs lack proof that any act or admission on the Defendant's part proximately caused Daniel Nickles to suffer damages. Second, Defendant argues that Plaintiffs' claim is barred by the statute of limitations. Because the Court finds, as set forth below, that summary judgment is warranted on the first ground, the Court will not consider the application of the statute of limitations.

**A. The Elements of a Malpractice Suit**

To prove a cause of action for legal malpractice, the plaintiff must establish: (1) the attorney defendant owed a duty to the plaintiff; (2) the attorney breached that duty; (3) plaintiff suffered damages as a result of that breach; (4) the breach was the factual cause of the damages: and (5) the breach was the proximate, or legal, cause of the plaintiff's damages. *Shearon v. Seaman*, 198 S.W.3d 208, 214 (Tenn. Ct. App. 2005). The plaintiff bears the burden of proving each element of the malpractice action. *Id.*

## B. Plaintiffs' Inability to Prove Damages

"In order to prove damages in a legal malpractice action, a plaintiff must prove that he would have obtained relief in the underlying lawsuit, but for the attorney's malpractice; consequently, the trial of a legal malpractice claim becomes, in effect, a 'trial within a trial.' " *Id.* (quoting *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001)). Thus, the first issue presented by the Defendant's motion is whether the Plaintiffs can establish that, or at least create a genuine issue of fact as to whether the Decedent would have been entitled to relief if he had been able to assert a cause of action for retaliation, harassment or discrimination by Food Lion as a result of his having filed a workers' compensation claim. Given the unavailability of any direct testimony from the Decedent or his former colleague, Shannon Russell, Plaintiffs, unfortunately, are in the position of having no admissible evidence that Food Lion engaged in any discriminatory, harassing or retaliatory behavior that would subject it to liability. The only close call is presented by the Decedent's potential claim for retaliatory discharge for his having filed a workers' compensation claim. Even with respect to that cause of action, however, Plaintiffs have not presented sufficient evidence of each element of their *prima facie* case to warrant submitting the matter to a jury.

Under Tennessee law, to establish a *prima facie* claim of workers' compensation retaliation, a plaintiff must show that: (1) he was an employee of the defendant at the time of his injury; (2) he made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated his employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate his employment. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). The burden of proof as to each of these elements rests upon the plaintiff. *Id.* The Tennessee Supreme Court has further stated that "[p]roof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury." *Id.* at 558–59. The plaintiff may establish causation "either by presenting direct evidence of the necessary causal link or by introducing compelling circumstantial evidence of such a link." *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992).

In considering the type of circumstantial evidence that might establish causation, the Tennessee Court of Appeals has noted:

> In an effort to prove causation, a plaintiff can present circumstantial evidence in numerous forms, to include the employer's knowledge of the compensation claim, the

> expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false. A plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship. Moreover, an employee cannot rely on the mere short passage of time between the filing of a workers' compensation claim and subsequent termination to prove a *prima facie* case of retaliation.

*Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006) (internal citations omitted). Only after the plaintiff has presented some proof of causation does the burden shift to the employer to show a legitimate, non-pretextual reason for the employee's discharge. *Anderson*, 857 S.W.2d at 559.

In the present case, the admissible evidence available to the Plaintiffs establishes that (1) the Decedent was employed by Food Lion at the time of his injuries; (2) he made a claim for workers' compensation benefits; and (3) his employment was terminated more than a year later, while his workers' compensation claim was still pending. However, Plaintiffs have not pointed to any admissible evidence of a causal relationship between the Decedent's workers' compensation claim and his termination, other than the mere fact that the employer obviously knew about the compensation claim. Although temporal proximity between the filing of a workers' compensation claim and the employee's termination is relevant to causation, it appears the Decedent was terminated more than a year, and possibly as much as two years, after he filed his workers' compensation claim. (*See* Doc. No. 32 (attorney affidavit indicating that suit was filed in 2003, but Decedent was not terminated until April 2005).) That length of time is likely not sufficiently "proximal" to be relevant to the issue of causation. Regardless, even if the fact that the workers' compensation lawsuit was still pending could be deemed to create temporal proximity, Tennessee courts have held that temporal proximity alone, without more, is not sufficient to give rise to an inference of a causal link. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (holding that the employee's discharge three days after his return to work was insufficient to establish a causal connection between his assertion of a workers' compensation claim and his termination).[3]

---

[3] In their depositions, Plaintiffs claim the Decedent was terminated eleven hours before his 401(k) plan contribution from Food Lion would have vested. Plaintiffs, however, have not demonstrated any personal knowledge regarding that allegation, nor have they presented any documentary evidence to support that claim.

Because the admissible evidence in the record is insufficient to support the Decedent's potential claims against Food Lion for discrimination or retaliation, Plaintiffs cannot prove that the Decedent was damaged by his former attorney's alleged negligence in advising him to waive his potential claims. The Plaintiffs' malpractice action must therefore fail.

Because the Court has determined that summary judgment in favor of the Defendant is warranted on that ground, it has no need to reach the issue of whether the statute of limitations for the Plaintiffs' claim has expired.

## IV. CONCLUSION

Because the Plaintiffs cannot establish that their Decedent was damaged by the Defendant Law Firm's alleged negligence, which is a necessary element of the Plaintiffs' legal malpractice claim, the Defendant is entitled to summary judgment in its favor. Defendant's motion will therefore be granted.

An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge